UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

HENRIETTA MANCINI,

      Plaintiff,
vs.

PENNYMAC LOAN SERVICES, LLC,

      Defendant.
_____/

## COMPLAINT

**COMES NOW**, the Plaintiff, HENRIETTA MANCINI, by and through undersigned counsel, and brings this action against the Defendant, PENNYMAC LOAN SERVICES, LLC ("PennyMac"), and as grounds thereof would allege as follows:

## INTRODUCTION

1. This action is brought by a consumer for PennyMac's violations of the Telephone Consumer Protection Act, 47 U.S.C §227, et seq. ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), and Florida Statutes §§ 559.55-559.785, known more commonly as the "Florida Consumer Collection Practices Act" ("FCCPA").

2. The FDCPA and FCCPA prevent debt collectors and persons, respectively, from engaging in abusive, deceptive, and unfair collection practices.

3. The TCPA prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or any artificial or prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio

common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. §227(b)(1)(A).

4. Ms. Mancini alleges that PennyMac has unlawfully called her cellular telephone in an attempt to collect an alleged debt in direct contravention the aforesaid statutes. Consequently, Ms. Mancini seeks injunctive relief as well as damages, fees, and costs in accordance with the FDCPA, FCCPA and the TCPA.

## JURISDICTION AND VENUE

5. This court has jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Federal courts have jurisdiction over private suits arising under the TCPA. Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740 (2012).

6. Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over Ms. Mancini's state law FCCPA claim in that it is so related to the federal TCPA and FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue in this District is proper because Ms. Mancini resides here and PennyMac does business and places phone calls into this District, and because a substantial portion of PennyMac's acts giving rise to the claims asserted herein occurred in this District.

## PARTIES

8. At all times relevant to this Complaint, Defendant, PennyMac was and is a foreign Limited Liability Company, formed under the laws of the State of Deleware has its principal place of business in Moorpark, California.

9. At all times relevant to this Complaint, PennyMac was and is a "person" as said term is defined under Florida Statute §1.01(3), and is subject to the provisions of Fla. Stat. §

559.72 because said section applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. § 559.55(1).

10. At all times relevant to this Complaint, PennyMac regularly collects or attempts to collect debts for other parties and is a "debt collector" as said term is defined under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

11. At all times relevant to this Complaint, PennyMac regularly uses the mail and telephone in a business for the principal purpose of collecting consumer debts.

12. At all times relevant to this Complaint, PennyMac was acting as a debt collector with respect to the collection of Ms. Mancini's alleged debt.

13. PennyMac services the mortgage loan secured on what was at the time Ms. Mancini's primary residence and principal dwelling, located at 2618 Sheridan Street, Hollywood, Florida, 33020.

14. At least a portion of the calls were regarding the above-reference property.

15. Upon information and belief, PennyMac began servicing the subject loan after it was already in default, in or about February, 2014.

16. At all times relevant to this Complaint, PennyMac has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA. 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

17. At all times relevant to this Complaint, Ms. Mancini was and is a natural person, and is a "consumer" as that term is defined by 15 U.S.C. 1692(a)(3) and Florida Statutes §559.55(2), and/or a person with standing to bring a claim under the FDCPA, FCCPA and the TCPA by virtue of being directly affected by violations of the Act.

18. At all times relevant to this Complaint, Ms. Mancini was and is a "person" as

defined by 47 U.S.C. § 153(32).

19. At all times material hereto, the debt in question was a "debt" as said term is defined under 15 U.S.C. §1692a(5) and Florida Statute §559.55(1).

## BACKGROUND AND GENERAL ALLEGATIONS

20. It is axiomatic that "the right to be let alone" is one of the most valued rights in a civilized society. *See* Olmstead v. United States, 277 U.S. 438 (1928). Ms. Mancini alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

21. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issued regulations implementing the TCPA, such calls as those alleged herein are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy, and such calls can be costly and inconvenient. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

22. On September 30, 2013, JPMorgan Chase Bank, N.A. ("Chase") filed a complaint to foreclosure mortgage against Ms. Mancini in the Circuit Court in and for Broward County, Florida bearing Case No. CACE13-021995 ("The Foreclosure").

23. On July 10, 2014, an order was entered in the Foreclosure substituting PennyMac for Chase as party plaintiff due to a transfer of interest.

24. On or about February 9, 2015, Ms. Mancini retained Loan Lawyers, LLC, for representation with regard to the Foreclosure and the mortgage debt for which PennyMac now provides servicing. Among the functions of PennyMac's servicing business is to collect payment on mortgage accounts.

25. The debt that PennyMac sought to collect from Ms. Mancini is an alleged debt arising from transactions entered into primarily for personal, family or household purposes.

26. Loan Lawyers, LLC filed its notice of appearance in the Foreclosure on February 23, 2015, and served a copy on counsel for PennyMac.

27. Additionally, Loan Lawyers, LLC informed PennyMac by letter dated February 26, 2015, and again on March 3, 2015, that it was representing Ms. Mancini with respect to the subject alleged debt.

28. Both letters also stated that Ms. Mancini expressly revoked any consent she may have given to be called on her cell phone.

29. PennyMac was aware or should have been aware of the existence and nature of the representation and scope of same. In fact, PennyMac began corresponding with Loan Lawyers, LLC, on or before March 11, 2015.

30. Upon information and belief, PennyMac, by and through its through its agents, representatives and/or employees acting within the scope of their authority, attempted to collect a debt from Ms. Mancini by using an automatic telephone dialing system ("ATDS") to place numerous telephone calls to Plaintiff's cellular telephone, (954) 515-6249.

31. Upon answering any of these calls, Ms. Mancini was greeted by an automated, machine-operated voice message or a noticeable period of "dead air" while the caller's telephone system attempted to connect the Ms. Mancini to a live telephone employee.

32. Ms. Mancini is the sole owner, possessor, subscriber, and user of the cellular telephone that PennyMac was calling

33. These calls originated from various numbers including 866-599-3409, 818-787-8376, and 866-545-9070, and include but are not limited to calls placed on March 29, 2016, at or

about 10:30 a.m., June 20, 2016, at or about 5:51 p.m.; August 1, 2016, at or about 1:39 p.m.; and August 8, 2016, at or about 7:02 p.m.

34.     PennyMac called Ms. Mancini many times in a campaign designed to apply psychological stress with the aim of recovering money for an alleged debt. PennyMac's calling campaign included multiple calls a day and/or calls on back-to-back days. But for PennyMac's use of an ATDS, it would not have been viable to call Ms. Mancini with the steady volume of calls PennyMac placed to Ms. Mancini's cellular telephone.

35.     Ms. Mancini was damaged by these unwanted, harassing and illegal calls. Her privacy was improperly invaded, her peace was disturbed, her cellular telephone's battery and memory were taxed, her cellular telephone line was tied-up, and she was forced to spend time tending to unwanted calls.

36.     Ms. Mancini did not expressly consent to PennyMac's placement of telephone calls to her cellular telephone by the use of an ATDS or a pre-recorded or artificial voice prior to PennyMac's placements of the calls.

37.     None of PennyMac's telephone calls placed to Ms. Mancini were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

38.     Upon information and belief, PennyMac knew their collection techniques were in violation of the TCPA, yet still continued to use them, therefore willfully or knowingly violated the TCPA.

39.     On July 27, 2016, an order was entered in the Foreclosure setting a foreclosure sale on Ms. Mancini's property for September 28, 2016.

40.     On September 2, 2016, Ms. Mancini sold her home to a third party, and PennyMac was paid on that date $166,118.84—which was the total amount then claimed to

owed by Ms. Mancini.

41.     On September 13, 2016, PennyMac's counsel in the Foreclosure filed a motion to cancel foreclosure sale, vacate final judgment, and dissolve lis pendens, etc., acknowledging that Ms. Mancini had paid the loan in full.

42.     Despite having paid off the loan in full, PennyMac continued to call Ms. Mancini with respect to the alleged debt.

43.     Ms. Mancini attempted to explain that she had paid off the loan, but was merely reminded her that the sale was still set for September 28, 2016.

44.     PennyMac continued to call Ms. Mancini into October of 2016.

45.     All conditions precedent to the filing of this Complaint have occurred or have been waived.

### **COUNT I-VIOLATION OF FCCPA, FLORIDA STATUTES §559.72**

46.     Plaintiff repeats, realleges and incorporates paragraphs 1 through 45.

47.     Florida Statutes §559.72 states in relevant part:

> "In collecting debts, no person shall…
>
> > (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
> >
> > 9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.
> >
> > (18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the

        debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Florida Statutes §559.72

48.    PennyMac has on many occasions called Ms. Mancini by telephone directly, multiple times a day, attempting to collect the debt, in contravention of Florida Statutes §559.72(7).

49.    Ms. Mancini's having to handle debt collection calls to her cellular multiple times a day has annoyed Ms. Mancini and caused unnecessary upon Ms. Mancini and her family.

50.    PennyMac, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FCCPA in that PennyMac asserted to Ms. Mancini that there was a pending foreclosure sale when that was not true, in contravention of Florida Statutes §559.72(9).

51.    PennyMac, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FCCPA in that PennyMac contacted Ms. Mancini in connection with the collection of a debt after PennyMac knew that Ms. Mancini was represented by counsel, and had knowledge of counsel's name and address, in contravention of Florida Statutes §559.72(18).

52.    Defendant, through its agents, representatives and/or employees acting within the scope of their authority knowingly violated Florida Statutes §559.72.

53.    As a direct and proximate result of the violation of the FCCPA by PennyMac, Ms. Mancini has been damaged. The damages of Ms. Mancini include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

54.    Ms. Mancini has hired Rodal Law, P.A., to represent her in this action and has agreed to pay a reasonable attorney's fee.

55.    As a result of the above violations of the FCCPA, pursuant to Florida Statute

§559.77(2), Ms. Mancini is entitled to recovery for actual damages, statutory damages of up to $1,000.00, together with reasonable attorney's fees and court costs.

**WHEREFORE**, Ms. Mancini respectfully prays that judgment be entered against Defendant, PENNYMAC LOAN SERVICES, LLC, for actual damages, statutory damages, along with costs and reasonable attorney's fees pursuant to Florida Statutes §559.77(2), and for such other and further relief as justice may require. Ms. Mancini further respectfully requests that this Honorable Court enter an order enjoining PennyMac from contacting Ms. Mancini including by and through a third party, with regards to the disputed debt.

### COUNT II-VIOLATION OF THE FDCPA, 15 USC 1692

56. Ms. Mancini repeats, realleges and incorporates by reference paragraphs 1 through 45.

57. PennyMac, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FCCPA in that PennyMac asserted to Ms. Mancini that there was a pending foreclosure sale when that was not true, in contravention of 15 U.S.C. 1692e.

58. PennyMac, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FDCPA in that PennyMac caused Plaintiff's telephone with such frequency as to harass Ms. Mancini in contravention of 15 U.S.C. 1692d.

59. PennyMac has on many occasions called Ms. Mancini by telephone directly, multiple times a day, attempting to collect the debt.

60. Ms. Mancini's having to handle debt collection calls to her cellular phone multiple times a day has annoyed Ms. Mancini and caused unnecessary stress upon Ms. Mancini and her family.

61. PennyMac's actions of calling Ms. Mancini continuously and regularly day after day, multiple times a day, reasonably can be expected to have the natural consequences of harassing Ms. Mancini which was the intent of PennyMac to illicit payment from Ms. Mancini for the alleged debt.

62. Through the above-referenced telephone calls and statements, PennyMac, through its agents, representatives and/or employees acting within the scope of their authority, has violated the FDCPA in that PennyMac contacted Ms. Mancini in connection with the collection of a debt after PennyMac knew that Ms. Mancini was represented by counsel, and had knowledge of counsel's name and address, in contravention of 15 U.S.C. §1692c(a)

63. Defendant, through its agents, representatives and/or employees acting within the scope of their authority knowingly violated 15 U.S.C. 1692.

64. As a direct and proximate result of the violation of the FDCPA by PennyMac, Ms. Mancini has been damaged. The damages of Ms. Mancini include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment.

65. Plaintiff has retained Rodal Law, P.A., to represent her in this action and has agreed to pay a reasonable attorney's fee.

66. Pursuant to 15 U.S.C. §1692k, Ms. Mancini is entitled to recover actual damages together with additional statutory damages up to $1,000.00, together with court costs and reasonable attorney's fees.

**WHEREFORE**, Ms. Mancini respectfully prays that judgment be entered against Defendant, PENNYMAC LOAN SERVICES, LLC, for actual damages, statutory damages, along with costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k, and for such other and further relief as justice may require.

## COUNT III- VIOLATION OF THE TCPA, 47 U.S.C § 227 (b)(1)(A)(iii)

67. Ms. Mancini repeats, realleges and incorporates by reference paragraphs 1 through 45.

68. PennyMac placed many non-emergency calls, including but limited to the calls referenced above, to Ms. Mancini's cellular telephone using an automatic telephone dialing system in violation of 47 U.S.C §227 (b)(1)(A)(iii).

69. It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system or prerecorded message without that person's express consent.

70. Ms. Mancini did not expressly consent to PennyMac to contact her via cellular phone, and even if Ms. Mancini had, the letters referenced above were an express revocation of any such consent. *See* Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265 (11th Cir. 2014). Even oral instructions to cease calls effectively revoke any prior consent the caller may have had. *See* Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014).

71. Upon information and belief, the aforesaid calls to Ms. Mancini's cellular telephone were placed using an automated telephone dialing system or employed a prerecorded voice message. These calls bore telltale signs of automation, such as a prerecorded message or a noticeable gap between Ms. Mancini's answering the call and a human being coming on the line.

72. PennyMac's method of contacting Ms. Mancini is indicative of its ability to dial numbers without any human intervention in the calling process, which the FCC has opined is the hallmark of an automatic telephone dialing system (i.e. auto-dialer). See *In the Matter of Rules & Regulations Implementing The Telephone Consumer Protection Act of 2008*, CG Docket No. 02-278, FCC 07-232 (1/4/08) ¶¶ 11-13; *In the Matter of Rules & Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 2003 WL 21517583, 18 F.C.C.R. 14014, ¶ 132 (Fed. Commc'n Cmm'n July 3, 2003).

73. In sum, PennyMac made telephone calls to Ms. Mancini's cellular telephone, which were either initiated by an automatic telephone dialing system and/or contained a pre-recorded message and were made without the prior express consent of Ms. Mancini.

74. Under the TCPA, and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

75. PennyMac, through its agents, representatives and/or employees acting within the scope of their authority acted willfully and intentionally violated the TCPA, 47 U.S.C § 227 (b)(1)(A)(iii).

76. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also* Mims v. Arrow Fin Servs., L.L.C*.,* 132 S. Ct. 740, 744, (2012) ("The Act bans certain practices invasive of privacy")

77. As a direct and proximate result of the violation of the TCPA by PennyMac, Ms. Mancini has been damaged. PennyMac's phone calls harmed Ms. Mancini by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

78. PennyMac's phone calls also harmed Ms. Mancini by (1) trespassing upon and interfering with Ms. Mancini's rights and interests in access to her cellular telephone and Ms. Mancini's right to enjoy the full utility of her cellular device; (2) trespassing upon and interfering

with Ms. Mancini's rights and interests in access to her cellular telephone line; (3) intruding upon Ms. Mancini's seclusion; (4) wasting Ms. Mancini's time; (5) depleting the battery life on Ms. Mancini's cellular telephone; (6) using memory storage space in Ms. Mancini's cellular telephone; and (7) causing Ms. Mancini aggravation, indignation and unwarranted stress.

79. The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $1,500.00, per call for each willful violation. 47 U.S.C. § 227(b).

80. The TCPA also allows the District court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id*. See also Mims, 132 S. Ct. at 746.

81. As a result of PennyMac's violations of 47 U.S.C. § 227 *et seq*, Ms. Mancini is entitled to an award of $1,500.00, in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(b)(3)(C), and $500.00, in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

82. Ms. Mancini is entitled to injunctive relief prohibiting PennyMac from contacting Ms. Mancini on her cellular phone using an automated dialing system or prerecorded voice pursuant to 47 U.S.C. Section 227(b)(3)(a).

**WHEREFORE**, Ms. Mancini respectfully prays that judgment be entered against Defendant, PENNYMAC LOAN SERVICES, LLC, for statutory damages of $1,500.00, or $500.00, for each and every violation, an order be entered enjoining PennyMac from calling Ms. Mancini's cellular telephone by use of an automatic dialing system, and for such other and further relief as justice may require.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Henrietta Mancini, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

 /s/ *Yechezkel Rodal*
YECHEZKEL RODAL, ESQ.
Florida Bar Number: 91210
RODAL LAW, P.A.
*Attorneys for Ms. Mancini*
3201 Griffin Road, Suite 203
Dania Beach, Florida 33312
Telephone:    (954) 367-5308
Facsimile:    (954) 272-7587
E-mail:    chezky@Rodallaw.com